**Marie O. PEDRAZA, on behalf of herself and all other persons similarly situated, Plaintiffs,**

v.

**UNITED GUARANTY CORPORATION, Defendant.**

**No. CIV. A. 199–239.**

United States District Court,
S.D. Georgia,
Augusta Division.

April 25, 2000.

Larry I. Smith, Thompson & Smith, PC, Augusta, GA, John B. Long, Thomas William Tucker, Dye, Tucker, Everitt, Long & Brewton, PC, Augusta, GA, Michael Champlin Spencer, Milberg Weiss Bershad Hynes & Lerach, New York, NY, Michael D. Calhoun, Gulley & Calhoun, Durham, NC, Melinda Lawrence, Patterson, Harkavy, Lawrence, LLP, Raleigh, NC, Charles A. Bentley, Jr., Bentley & Associates, PA, Durham, NC, for Plaintiff.

James W. Purcell, Fulcher, Hagler, Reed, Hanks & Harper, LLP, Augusta, GA, Thomas M. Hefferon, Goodwin, Procter & Hoar, LLP, Washington, DC, Michael K. Murray, F. Dennis Saylor, IV, Goodwin, Procter & Hoar, LLP, Boston, MA, for Defendants.

## *ORDER*

ALAIMO, District Judge.

Plaintiff brings this suit under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq. She, along with the members of her class, purchased mortgage insurance from United Guaranty Corporation ("UGC"), Defendant, in connection with the financing of their home purchases. The sale of mortgage insurance, in itself, does not violate RESPA or any other federal statute. Plaintiff's complaint, however, alleges that Defendant sold its mortgage insurance product to her and the members of the class by means of a kickback scheme. Under this scheme Defendant agreed to sell to Plaintiffs' lenders insurance products at below-market prices. In exchange, the lenders agreed to refer their borrowers who needed mortgage insurance to Defendant. Plaintiff argues that such a scheme systematically violates § 2607(a) of RESPA, which provides, *inter alia,* that "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding ... that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." Plaintiff seeks a monetary

award equal to three times the amount she paid for the settlement service involved, as provided by § 2607(d)(2), reasonable attorneys' fees, and other equitable relief, for herself, as well as for a class of similarly situated persons who obtained mortgage insurance from Defendant after January 1, 1996.

Defendant has moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss claims of all members of the putative class who obtained their mortgage insurance prior to December 17, 1998, arguing that those claims are barred by RESPA's one-year statute of limitations.[1] 12 U.S.C. § 2614. Plaintiff argues that RESPA's statute of limitations is subject to equitable tolling and, therefore, that Defendant's argument is without merit. Defendant responds that even if equitable tolling applies to RESPA, Plaintiff has failed to plead facts sufficient to trigger equitable tolling as required by Rule 9(b) of the Federal Rules of Civil Procedure.

The Court, after careful consideration of the parties' briefs, concludes that RESPA's one year statute of limitations is subject to limited equitable tolling, but that Plaintiff's complaint as pled, does not satisfy the requirements of Rule 9(b) to justify tolling Plaintiff's claim. The Court, therefore, will **GRANT** Defendant's motion **in part** and **DENY** it **in part.**

### BACKGROUND

Mortgage insurance plays a vital role in the smooth functioning of this Nation's market in residential real estate by lowering the costs that potential homeowners pay for the credit necessary to purchase their homes.[2] Mortgage insurance is generally required whenever the amount of the loan exceeds 80% of the value of the home being acquired. Mortgage insurance provides protection to the lender (or the ultimate owner of the loan) in the event of default. Because mortgage insurance protects lenders from the risk of default in these highly-leveraged transactions, they can extend credit to purchasers who otherwise would not qualify for credit. Furthermore, because mortgage insurance reduces the losses which lenders face in the event of a shortfall in the proceeds generated by a foreclosure, they can offer cheaper terms of credit to those home purchasers whose down payment is less than 20% of the home's value.[3]

Mortgage insurance also reduces the costs of home mortgages by enhancing the marketability of the loans themselves in the secondary credit markets. Thus, Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation (" Freddie Mac")—two Congressionally-chartered corporations whose purpose is to buy closed loans so as to increase available capital for lenders to lend—are precluded by statute from purchasing "risky" loans, defined, in part, as loans in which the homeowner's equity is less than 20%, unless the loans are protected by mortgage insurance or some other type of credit enhancement. *See* 12 U.S.C. § 1717(b)(2); 12 U.S.C. § 1454(a)(2). Private investors who purchase and securitize loans for re-sale on the secondary market also rely on private mortgage insurance to reduce the risk of default. In the absence of mortgage insurance, then, the marketability of many home loans would be reduced, thus reducing the amount of capital available for lenders to lend to home purchasers with little equity to offer at the time of purchase. The availability of mortgage insurance at an affordable price, then, is critical to preserving the smooth functioning of the residential real estate market.

---

**1.** Plaintiff's claim was filed on December 17, 1999.

**2.** By any standard, the market for home ownership in recent years has been thriving. Indeed, the percentage of American households living in their own home 66.6% by recent count — has never been greater. Louis

Uchitelle, *Home Ownership Now—A Hidden Generation Gap*, N.Y. Times, September 26, 1999.

**3.** Plaintiff, for example, was able to obtain a loan of $85,400 to purchase her home, although the loan represented 95% of the property's value.

## DISCUSSION

### I. RESPA's Regulation of the Real Estate Settlement Market

Congress passed RESPA in 1974 in an attempt to enhance the transparency of the costs associated with real estate closings, including the costs of mortgage insurance.[4] The Congress that enacted RESPA hoped the statute would effect the following results: (1) more effective advanced disclosure to home buyers and sellers of settlement costs; (2) elimination of kickbacks or referral fees that unnecessarily increase costs of settlement services; (3) reduction in the amounts home buyers are required to place in escrow to insure payment of insurance and real estate taxes; and, (4) reform and modernization of local record keeping of land title information.[5] 12 U.S.C. § 2601(b).

Congress pursued a three-pronged strategy in reforming the market for real estate settlement services. The first was to arm the consumers of those services with better information. Thus, the Secretary of Housing and Urban Development (the "Secretary") was to "develop and prescribe a standard form for the statement of settlement costs which shall be used . . . as the standard real estate settlement form in all transactions in the United States which involve federally related mortgage loans. Such form shall conspicuously and clearly itemize all charges imposed upon the borrower . . . in connection with the settlement." 12 U.S.C. § 2603(a). Lenders, in turn, were required to "complete and ma[ke] available for inspection by the borrower at or before settlement" the form prescribed by the Secretary unless the borrower waives her right "to have the form available at such time." 12 U.S.C. § 2603(b).

RESPA also required the Secretary to prepare informational booklets that were to be distributed by lenders to prospective borrowers to aid them in understanding the nature and costs of real estate settlement services, 12 U.S.C. § 2604(a). Congress imposed upon the Secretary an obligation to "include in clear and concise language" information describing and explaining the nature and purpose of the various costs incident to a real estate settlement; an explanation of the standard real estate settlement form promulgated by the Secretary pursuant to § 2603; an explanation of the purpose and nature of escrow accounts in real estate loans; an explanation of the choices available to borrowers in selecting providers of services necessary to a real estate settlement; an explanation of the unfair practices and unreasonable or unnecessary charges that may exist in a real estate settlement that a prospective buyer should avoid; and, any other information the Secretary deemed prudent to provide to prospective consumers of real estate settlement services. 12 U.S.C. § 2604(b). Lenders were then required to provide this informational booklet to each person who applies for a loan to purchase residential real estate. 12 U.S.C. § 2604(d), as amended by Pub.L. 102–550, Title IX, § 951, Oct. 28, 1992, 106 Stat. 3892. Lenders were also charged with providing a good faith estimate of the charges a borrower was likely to incur for specific settlement services at the time a borrower was given the informational booklet required by RESPA. 12 U.S.C. § 2604(c).

The second-prong of RESPA's strategy in reforming this market was the substantive prohibition against kickbacks and

---

4. The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.
12 U.S.C. § 2601(a).

5. Congress subsequently abandoned any attempts to reform local title recording systems in 1996 when it repealed certain provisions of RESPA, including § 2611, which required the Secretary of Housing and Urban Development to create a model land recordation system. Pub.L. 104–208, § 2103(h), 110 Stat. 3009–401 (1996).

unearned fees. 12 U.S.C. § 2607(a). Congress provided numerous public and private remedies for violations of this provision, both civil and criminal.[6] Section 2607(d)(2) allows persons whose costs for settlement services were incurred in violation of the anti-kickback provision to recover treble the cost of such unlawful charge, regardless of whether such person actually paid an inflated cost for such services.[7] Congress also authorized the Secretary, the Attorneys General, and the insurance commissioners of the States to bring actions enjoining violations of the anti-kickback provision.

Congress, at the same time that it created this multi-tiered enforcement scheme created express time limits on the liability of RESPA defendants. Thus, private litigants were to have one year in which to bring suit, whereas public enforcement of violations could be brought within three years of any violation of RESPA. 12 U.S.C. § 2614. RESPA is silent as to the issue in contention here: Congress neither expressly authorized equitable tolling, nor did it proscribe it.

The third-prong of Congress' strategy can be summed up as "continued vigilance": the Secretary was required to prepare reports for the Congress regarding the desirability of imposing on lenders new regulation in this area, including the possibility of imposing the costs of certain real estate settlement charges that would otherwise have been paid by borrowers. 12 U.S.C. § 2612. Subsequently, however, Congress came to the conclusion that its policy of "continued vigilance" had become obsolete —— or so it seems, because Congress chose to repeal not only § 2612, but also § § 2611 and 2613 in 1996.[8] Pub.L. 104–208, § 2103(h), 110 Stat. 3009–401 (1996).

Against this backdrop, the Court will analyze the parties' contesting claims regarding the availability of equitable tolling under RESPA.

## II. Equitable Tolling Under RESPA

Whether a private litigant under RESPA who brings her claim outside the one year statutory limitations period is entitled to claim equitable tolling of the limitations period is a question of first impression in this Circuit. The relevant precedents of the Eleventh Circuit suggest that it is of two minds when it comes to the availability of equitable tolling under federal statutes. *Compare Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703 (11th Cir.1998) (holding that Truth in Lending Act's ("TILA") one year statute of limitations is subject to equitable tolling) *with Hill v. Texaco*, 825 F.2d 333 (holding that one year statute of limitations of Petroleum Marketing Practices Act ("PMPA") not subject to equitable tolling) (11th Cir. 1987). To compound the difficulty, both decisions purportedly rest on an analysis of Congressional intent, although both statutes are equally silent on the question of equitable tolling. *Ellis*, 160 F.3d at 707; *Hill*, 825 F.2d at 334–35.

In the absence of express Congressional direction, both decisions attempted to divine Congressional intent with the aid of judicially created presumptions. Thus, the *Hill* court intimated that Congressional practice, when it wishes equitable tolling to apply to a statute, is to use language such as "after the cause of action accrues," or even to provide expressly that the statute of limitations does not begin to run until the plaintiff knows of the wrong. *Hill*, 825 F.2d at 335 n. 1. Based on the presumption that Congress speaks when it wishes equi-

---

**6.** Criminal penalties include the possibility of a term of one-year in jail or a fine of $10,000 or both. 12 U.S.C. § 2607(d)(1).

**7.** Liability in this case is joint and several, and the plaintiff may recover against either the person paying the kickback, receiving it, or both. 12 U.S.C. § 2607(d)(2).

**8.** Section 2611 required the Secretary to establish, on a demonstration basis, a model system of land recordation in order to simplify land transfers. Section 2613 required the Secretary to determine the feasibility of including statements of the range of costs for specific settlement charges with the information booklets required by § 2604.

table tolling to apply, the *Hill* court interpreted Congressional silence in PMPA as determinative of its intent to exclude equitable tolling.

The *Ellis* court, however, began its analysis with precisely the opposite presumption: Every federal statute of limitations is subject to equitable tolling unless Congress states otherwise. *Ellis*, 160 F.3d at 706. Accordingly, it interpreted Congressional silence in TILA as indicative of an intent to provide for equitable tolling. The *Ellis* court further distinguished *Hill* on the grounds that, while TILA is a "consumer protection statute" which is "remedial" and, therefore, must be construed liberally, PMPA "has a very specific purpose—protecting franchisees from wrongful termination of their franchises." *Id.* at 707. The principle behind the distinction between the two statutes is unclear, however, unless the numerosity of the potential beneficiaries of each statute is decisive. After all, TILA and PMPA are equally "remedial" with respect to the intended beneficiaries of each statute.

Outside the Eleventh Circuit, only the D.C. Circuit has concluded that the limitations period of RESPA is "jurisdictional" and, therefore, that equitable tolling is not available for a RESPA plaintiff. *Hardin v. City Title & Escrow Company*, 797 F.2d 1037 (D.C.Cir.1986). The D.C. Circuit found persuasive the fact that Congress chose to include the limitations period within "the same sentence that creates federal and state court jurisdiction." *Id.* at 1039. Consequently, this indicated Congressional intent to create a jurisdictional time limitation, rather than an ordinary statute of limitations which would be subject to equitable tolling. *Cf. Ellis*, 160 F.3d at 706 (distinguishing between Congressionally enacted time limits that "extinguish the right" and those that "simply bar the remedy of enforcement," the former being a limitation on a court's jurisdiction, while the latter is not).

Other Circuits, however, have rejected the *Hardin* court's premise that Congress' decision to place a time limitation in the statute's jurisdictional provision is dispositive of Congressional intent. Thus, the Third Circuit found that the limitations period of TILA was subject to equitable tolling despite the fact that its limitation period "is contained in the same statutory provision as the grant of jurisdiction." *Ramadan v. The Chase Manhattan Corp.*, 156 F.3d 499, 502–03 (3rd Cir.1998) (*citing Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 427 n. 2, 85 S.Ct. 1050, 1054 n. 2, 13 L.Ed.2d 941 (1965)) ("the fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled."). Likewise, the Seventh Circuit criticized *Hardin*'s reasoning, concluding that "courts hold federal statutes of limitations to be jurisdictional only when the United States is a defendant" and, therefore, refused to follow it, reaching the conclusion that RESPA's statute of limitations, like other Congressionally created statutes of limitations, is subject to equitable tolling. *Lawyers Title Insurance Corp. v. Dearborn Title Corp. et al.*, 118 F.3d 1157, 1166 (7th Cir.1997). District courts also have been critical of *Hardin*'s reasoning. *Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787 (D.Md.1998); *Moll v. U.S. Life Title Insurance Company of N.Y.*, 700 F.Supp. 1284 (S.D.N.Y.1988).

Criticism of *Hardin*'s reasoning, however, is not sufficient by itself to conclude that RESPA provides for equitable tolling. The courts holding that RESPA provides for equitable tolling often argue that RESPA is analogous to TILA.[9] Courts, including the Eleventh Circuit, have uniformly concluded that TILA's one year statute of limitations is subject to equitable tolling, *Ellis*, 160 F.3d at 706 ("Every other circuit that has considered the issue has concluded that TILA is subject to equitable

---

9. Indeed, even the *Hardin* court agreed that RESPA's limitation period ought to be inter-

preted in light of TILA's statutory language. *Hardin*, 797 F.2d at 1039–40.

tolling."). Accordingly, it follows that RESPA's limitations period should also be subject to equitable tolling.[10]

■ The great weight of authority, then, supports Plaintiff's position that RESPA is subject to equitable tolling. Because the Eleventh Circuit has concluded that TILA's statute of limitations is subject to equitable tolling, the Court is forced to agree with Plaintiff that *Ellis* controls this case, not *Hill.* Accordingly, the Court concludes that equitable tolling applies to Plaintiff's RESPA claim.[11]

**10.** *Lawyers Title,* 118 F.3d at 1166.

Of particular relevance are the decisions which hold that the statute of limitations in the Truth in Lending Act is not jurisdictional even though the limitations period is found in the same section as the provision *conferring jurisdiction on the federal courts* to enforce the Act—the principal ground on which the District of Columbia Circuit has held that the one year statute of limitations in the Real Estate Settlement Procedures Act is jurisdictional.

(Internal citations omitted).

**11.** The Court reaches this conclusion with some reluctance. Federal courts' liberality in granting relief to private litigants under the doctrine of equitable tolling stands in sharp contrast to their niggardliness in implying private statutory causes of action, although in both instances the equitable powers of federal courts are implicated. The decisions of the Supreme Court since *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), have placed upon Congress almost exclusive responsibility for fashioning remedies for the violation of federally-created statutory rights, although at an earlier era in our history, federal courts routinely implied remedies for the violation of federal statutes.

The doctrine of equitable tolling, and the assumption of *its routine availability, Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743, are likewise rooted in an era when Congress routinely left "remedial details" to the federal courts. *Id.* at 395, 66 S.Ct. 582. Indeed, Justice Frankfurter stated explicitly that Congress "has usually left the limitation of time for commencing actions under national legislation to judicial implications." *Id.,* S.Ct. at 584. Accordingly, the *Holmberg* Court's statement that "[t]his equitable doctrine is read into every federal statute of limitation," ought not be applicable to modern Congressional regulatory enactments that are characterized by comprehensive remedial schemes and have no analogues to common law fraud actions.

■ · Just because equitable tolling is available, however, does not mean that equitable tolling can save a claim for an indefinite period of time. Indeed, RESPA provides two limitations periods, a one year period for private enforcement, and a three year period for public enforcement. The Supreme Court interpreted the second of the two limitations periods provided by the Securities Exchange Act of 1934 as a statute of repose.[12] *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 359–60, 111 S.Ct. 2773, 2780, 115

It can hardly be argued that Congress left the "remedial details" of RESPA to the courts. As the Supreme Court has stated, "the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson v. Railway Express Agency, Inc.,* ·421 U.S. 454, 463–464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). When courts apply equitable tolling, therefore, they potentially alter a Congressional "value judgment."

An important value implicated by the application of equitable tolling is the optimal enforcement level of a substantive prohibition. When courts . allow plaintiffs to prosecute their claims outside of the statute of limitations, they authorize private enforcement of the statute in a manner that is potentially contrary to an express Congressional judgment. The danger of over-enforcement is especially palpable when Congress, in addition to creating "private attorneys general," also provides for· public—indeed, even criminal—enforcement, as is the case with RESPA. Thus, there is ' a real danger in the regulatory context that routine application of equitable tolling will alter the legislative bargain represented by the statute at 'issue. *See generally,* Frank H. Easterbrook, *Statutes' Domains,* 50 U. Chi. L.Rev. 533 (1983). Given these dangers, it would seem the more prudent course would be to hew closely to the language of federal· statutes, as is the approach federal courts take with respect to implied causes of action. For the reasons already stated, however, the Court is not in a position to alter the presumptive availability of equitable tolling ·given its well-established status in federal case law.

**12.** "No action shall be maintained to enforce · any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within

L.Ed.2d 321 (1991). Equitable tolling is not applicable to statutes of repose, in contrast to statutes of limitation. *Weddel v. Secretary of Health and Human Services,* 100 F.3d 929, 931 (Fed.Cir.1996). Although the language of § 2614 differs slightly from that of the 1934 Act, the Court is convinced that the three year period of limitation provided by § 2614 is most reasonably read as a statute of repose in light of the overall structure of RESPA. Therefore, equitable tolling under RESPA is limited to claims alleging violations of RESPA that occurred within three years of the violation.[13] Accordingly, the Court will dismiss the claims of those members of Plaintiff's class whose injury occurred prior to December 17, 1996.

### III. *Equitable Tolling and Pleading Requirements Under Rule 9(b)*

The purpose of the federal equitable tolling doctrine is to prevent a defendant from "concealing a fraud, or ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it." *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874). A plaintiff, in order to qualify for the protection provided by equitable tolling, must show that (1) the defendant engaged in a course of conduct designed to conceal evidence of his alleged wrongdoing; (2) the plaintiff was not on actual or constructive notice of that evidence; and, (3) the plaintiff exercised due diligence; viz., the plaintiff did not "sleep on her rights." *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1255 (1st Cir.1996); *Larson v. Northrop Corporation,* 21 F.3d 1164, 1173 (D.C.Cir.1994); *Martin v. Consultants & Administrators, Inc.,* 966 F.2d 1078, 1093 (7th Cir.1992); *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1415–16 (9th Cir.1987).

The first element may be satisfied in one of two ways. The first method, described redundantly as "active concealment," occurs when the defendant successfully conceals the existence of the plaintiff's cause of action against him despite the plaintiff's exercise of due diligence. The second way, known as a "self-concealing wrong," occurs when the defendant commits the substantive wrong in such a way "as to conceal the very existence of a cause of action, and ... misleads [the] plaintiff in the course of committing the wrong." *Hobson v. Wilson,* 737 F.2d 1, 33 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Thus, in the first case "additional acts of concealment [beyond the substantive wrong] are required to trigger the tolling doctrine," whereas in the second case, "concealment is established by the nature of the act." *Id.*[14]

---

three years after such violation." 15 U.S.C. § 78i(e).

**13.** In addition to RESPA's remedial structure, the statute's legislative history counsels against liberal interpretation of its remedial provisions. At the time of its passage, Congress was faced with two bills, each of which offered a radically different approach to reforming the real estate settlement market. The bill that was defeated would have authorized the Secretary to fix the costs of certain services and impose them on lenders, whereas the version that was finally adopted chose an approach that relied on greater transparency in the market on the theory that individuals would then be enabled to bargain for the best prices. Indeed, Senator Proxmire, the sponsor of the defeated version, derided the version that eventually was adopted as "a major defeat for consumers and a stunning victory for the real estate settlement lobby." S.Rep. No. 93–866 (1974). Therefore, a private party's right to seek equitable tolling must be balanced against the statute's desire to protect real estate settlement service providers from suits three years beyond the occurrence of an alleged statutory violation.

**14.** The *Hobson* court further explained the distinction between the two categories of conduct that trigger equitable tolling, saying:

The difference in the two categories, as we see it, is whether the deception, misrepresentation, trick or contrivance is a necessary step in carrying out the illegal act, or whether it is separate from the illegal act and intended only to cover up the act. For example, if a thief steals an antique vase and replaces it with a fake rendition, the

In both cases, however, the third element must still be satisfied. The party bearing the burden of persuasion on due diligence, however, is a function of whether the plaintiff alleges active concealment or a self-concealing wrong. Thus, if the plaintiff alleges a self-concealing wrong, courts have forced the defendant to show that the plaintiff failed to exercise due diligence; whereas in a case alleging active concealment, the burden remains on the plaintiff to show that she exercised due diligence in preserving her cause of action. *Id.* at 35; *J. Geils Band*, 76 F.3d at 1259.[15]

■ Because the doctrine of equitable tolling derives from the practice of federal courts of equity, federal courts have predictably adopted the same pleading requirements those courts traditionally imposed upon plaintiffs seeking equitable relief from a statute of limitations.[16]

act of replacement—whether it occurs immediately after the original vase is removed or hours or days thereafter—is a separate act of concealment. This is because once the original is taken, the illegal act is done. An example of the other category would be a scheme in which deception or misrepresentation affected the behavior of another, where that change in behavior enabled the would-be defendant to carry out his scheme—as where a person knowingly sells a fake vase as a real antique. In that instance, the statute would toll until the buyer discovered or should have discovered the deception. *Hobson v. Wilson*, 737 F.2d 1, 33 n. 102 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

15. Judge Posner has criticized the distinction between active concealment and self-concealing wrongs as confusing. *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1101 (7th Cir.1992) (Posner, J., concurring) ("I do not think it promotes clear thinking about fraudulent concealment to distinguish between 'self-concealing wrongs' and 'active concealment.'"). Instead, Judge Posner argues that the courts have conflated two distinct concepts under the rubric of fraudulent concealment, both of which have the same effect—to delay the running of the relevant statute of limitations.

The first, equitable tolling, applies when the plaintiff, after discovery of his injury, and despite his exercise of due diligence, is "not able to file his complaint within the statutory period." *Id.* In this case, the plaintiff is given a reasonable amount of additional time so as to allow him to discover the facts underlying his claim after discovering the injury. Thus, "[d]iscovery of the injury starts the running of the statute [of limitations]; equitable tolling allows the plaintiff to arrest the running of the statute to give him time to discover that he has a claim." *Id.* Accordingly, equitable tolling applies when a plaintiff loses time without fault on either his part or that of the defendant and, thus, she must demonstrate the exercise of due diligence in the pursuit of her claim. *Id.* at 1102.

The second, equitable estoppel, applies when the defendant has done something to prevent the plaintiff from filing his claim. The defendant's conduct in this case can be fraudulent, although it need not be. For example, equitable estoppel would apply to toll the statute of limitations when the defendant promises the plaintiff not to plead a statute of limitations defense if the plaintiff agrees to delay filing suit while the parties try to resolve their differences outside of court. It also applies, for example, where a plaintiff, after discovering that she has incurred a huge loss on an investment, complains to the defendant, who then concocts an "elaborately fraudulent tale, as a result of which the plaintiff loses months in discovering that the defendant's wrongdoing was responsible for [her] financial disaster." Because the defendant in this example concealed his wrong, thereby causing the plaintiff to lose time in filing her suit, not only is the statute of limitations tolled, but the plaintiff does not have to show due diligence, although she must still demonstrate that her reliance on the defendant's misrepresentations were reasonable. *Id.*

Judge Posner concludes by pointing out that in applying these principles, it is necessary to distinguish carefully between (1) the plaintiff's discovery of the loss, and (2) the plaintiff's discovery of the facts necessary to formulate her complaint. The statute of limitations begins to run from the former date, not the latter, unless the plaintiff can show some reason to toll the statute. *Id.* at 1103.

16. A complainant, (to avoid the statute of limitations,) must state in his bill distinctly the particular act of fraud, misrepresentation, or concealment, must specify how, when, and in what manner, it was perpetrated. The charges must be definite and reasonably certain, capable of proof, and clearly proved.... And especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made.

*Charlotte Telecasters, Inc. v. Jefferson–Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976). Therefore, a plaintiff must satisfy Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity in her complaint the facts giving rise to a claim of fraudulent concealment before a federal court will toll the statute of limitations. *J. Geils Band*, 76 F.3d at 1255; *Larson*, 21 F.3d at 1173; *Volk*, 816 F.2d at 1415–16. This includes alleging the specific conduct of the defendant that entitles the plaintiff to toll the statute against *that* defendant. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir.1997); *O'Brien v. National Property Analysts Partners, et al.*, 719 F.Supp. 222, 232 (S.D.N.Y.1989) (court described plaintiffs' failure to specify which defendant committed which act of concealment is "fatal" to their claim, for allegations that one of several defendants acted to deceive plaintiffs does not toll statute of limitations against all defendants).

■ A plaintiff's generalized and conclusory allegations of fraudulent concealment do not satisfy the requirements of Rule 9(b). *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2nd Cir.1983). To satisfy Rule 9(b), the plaintiff's complaint must "set forth the time, place and manner" in which any act of fraud occurred. *Brooks*, 116 F.3d at 1381 (11th Cir.1997). Although 9(b)'s intent is to eliminate claims of fraud in which all the facts are learned only through discovery after the complaint is filed, it does not abrogate the Federal Rule's policy of "notice pleading" embodied in Rule 8. *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985).

### IV. *Plaintiff's Fraudulent Concealment Claim*

In paragraph 27 of her complaint, Plaintiff states that:

It would be inequitable to apply the one-year limitation period set forth in RESPA section 16, 12 U.S.C. § 2614, to preclude the claim of any plaintiff or

class member. UGC's kickback scheme could not reasonably have been discovered by plaintiff or other class members prior to the filing of this suit. UGC acted to conceal and prevent plaintiff and other class members from discovering the circumstances giving rise to this claim. Plaintiff and the other class members have been prevented from suing before now due to these inequitable circumstances. The doctrine of equitable tolling accordingly applies to the claim asserted herein.

Plaintiff's Complaint, ¶ 27.

Defendant has moved for dismissal under Rule 12(b)(6). Accordingly, a liberal standard is applied in reading Plaintiff's complaint. Thus, the Court must accept Plaintiff's allegations as true, construing them in the light most favorable to Plaintiff. *See, e.g., Harper v. Thomas*, 988 F.2d 101, 103 (11th Cir.1993). The Court, therefore, is obliged to conclude that UGC was engaged in an unlawful kickback scheme in violation of RESPA. Even under the liberal standards that apply to a motion to dismiss. Plaintiff's allegations of fraudulent concealment are not pled with sufficient particularity to withstand Defendant's motion to dismiss those claims arising from Defendant's unlawful conduct prior to December 17, 1998.

■ The deficiencies in Plaintiff's allegations are numerous. The first is that Plaintiff fails to identify any conduct of Defendant, with the exception of the substantive violation of RESPA, that would justify tolling the statute of limitations. Indeed, Plaintiff does not allege that she had any dealings with Defendant. Plaintiff attempts to remedy this defect by arguing in her brief that Defendant's violation of RESPA is a self-concealing wrong. Even assuming this to be the case, Plaintiff must nevertheless plead sufficient facts to allow the Court to conclude that she and other members of her class have satisfied the second element of a fraudulent con-

*Stearns v. Page*, 48 U.S. (7 How.) 819, 829, 12       L.Ed. 928 (1849).

cealment claim; viz., that they were not on constructive notice of Defendant's violation of RESPA.[17] Plaintiff's allegation simply provides no basis from which the Court could conclude that members of the class were ignorant of Defendant's unlawful conduct and, if they were, whether that ignorance was reasonable. Even in a fraud case, tolling of the statute of limitations "requires proof that the defendant did something (beyond merely praying) to prevent the world in general or the plaintiff in particular from discovering the fraud." *Martin*, 966 F.2d at 1103 (Posner, J., concurring).

In any event the Court disagrees with Plaintiff's characterization of Defendant's conduct as a self-concealing wrong. Plaintiff alleges only that Defendant engaged in a kickback scheme with lenders in violation of § 2607(a). Yet, this provision does not create any duty on the part of Defendant to disclose the existence of such a scheme to Plaintiff or other members of her class. *Moll*, 700 F.Supp. at 1289. Thus, RESPA can be violated without any misrepresentation at all. *Id.*

As noted above, however, RESPA does require *lenders* to make affirmative disclosures regarding the costs of real estate settlement services in advance of closing. Likewise, RESPA obliges the Secretary to prepare informational booklets intended to educate consumers of these services on the potentially abusive practices in this market. Lenders are then required to distribute such informational booklets to prospective customers at the time they fill out an application for a residential loan. Armed with this information, the statute assumes that consumers of real estate settlement services are able to bargain their way to the best possible price for the costs associated with closing a real estate transaction.[18] Under the statute, the "sunshine" of disclosure is the "antiseptic" that allows consumers to avoid artificially high prices created by unlawful kickback schemes.

If the lender violates these disclosure provisions by giving a consumer false information that would lull her into reasonably believing she is receiving a competitive price for all the costs of a closing when, in fact, the costs are inflated as a result of an unlawful kickback, the lender would have actively concealed the plaintiff's cause of action. Accordingly, the plaintiff in this case would be entitled to toll the statute of limitations unless the plaintiff failed to exercise due diligence.

On the other hand, if a lender violates § 2607's anti-kickback provision, but otherwise fully and accurately discloses all the information related to the costs associated with the closing under § 2603, and provides the plaintiff with the Secretary's informational booklet as required by § 2604, the plaintiff is put on constructive notice of her cause of action and, therefore, the statute of limitations immediately begins to run. *Cf. Moll*, 700 F.Supp. at 1293 (failure to inquire about how title insurance proceeds were to be distributed at time of closing negates a finding that plaintiff exercised due diligence in preserving claim to challenge how those proceeds were actually distributed). In this situation, the plaintiff will be entitled to toll the statute of limitations only if she can demonstrate that, despite her exercise of due diligence, she was unable to discover enough facts to allow her to file a timely complaint.

Applying these principles to Plaintiff's complaint, the Court notes that it does not mention the conduct of the lender at all. The Court, therefore, cannot determine whether Plaintiff, much less the members of her class, were on actual or constructive notice of Defendant's alleged violation of RESPA. Plaintiff, therefore, must amend her complaint to allege facts that, if true,

---

**17.** This condition may be difficult for Plaintiff to satisfy because she filed her claim within the statutory limitations period and, therefore, cannot claim that she was not on notice of Defendant's violation of RESPA.

**18.** RESPA, therefore, is not so much a consumer protection statute as it is a consumer "self-help" statute.

would justify the Court's conclusion that either (1) Plaintiffs exercised due diligence in discovering their claim but were unable to discover the unlawful scheme within the one year statutory period, or (2) there was some affirmative misrepresentation by Defendant upon which Plaintiffs reasonably relied, as a result of which, they delayed filing their complaints.

Finally, Plaintiff is free under REPSA to sue either First Union, her lender, UGC, her mortgage insurer, both, or only one of them. For whatever reason, she has chosen to sue only UGC. That is certainly her prerogative. However, she cannot use allegations of fraudulent conduct on the part of First Union as the basis of a fraudulent concealment claim against Defendant for purposes of tolling the statute of limitations against UGC unless she alleges some link between the fraudulent conduct of her lender and Defendant.

## CONCLUSION

As a matter of first impression, the Court holds that RESPA's one-year statute of limitations is subject to equitable tolling, but not beyond the three year statute of repose provided in § 2614. Accordingly, the claims of Plaintiff's class that arise out of Defendant's violations of RESPA prior to December 17, 1996, are hereby **DISMISSED WITH PREJUDICE.**

Although equitable tolling is available to toll RESPA's statute of limitations, Plaintiff's claim has failed to meet Rule 9(b)'s requirement to plead with sufficient particularity the circumstances authorizing a finding of fraudulent concealment by Defendant. The complaint provides no grounds upon which the Court can toll the statute of limitations. Accordingly, the class claims that arose prior to December 17, 1998, are hereby **DISMISSED WITH LEAVE TO AMEND.** If Plaintiff fails to amend her complaint within thirty (30) days of the entry of this Order, the Complaint will stand dismissed with prejudice.